**UNITED STATES GYPSUM COMPANY, Plaintiff,**

v.

**William J. MUSZYNSKI et al., Defendants.**

**No. 00 CIV. 9700(JSR).**

United States District Court, S.D. New York.

July 10, 2002.

As Corrected July 15, 2002.

Daniel Riesel, Sive, Paget & Riesel, P.C., New York City, for plaintiff.

Robert Sadowski, Assistant United States Attorney, United States Attorney's Office, New York City, for defendants.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

By Order dated June 28, 2002, the Court granted the motion of plaintiff United States Gypsum Company ("USG") for summary judgment in its favor, denied the cross-motion for summary judgment of the defendants—consisting of the New York District of the United States Army Core of Engineers ("COE"), Region 2 of the Unit-

ed States Environmental Protection Agency ("EPA"), and relevant officials of both of those agencies—and remanded the case to the COE to reconsider plaintiff's application for a permit that would allow it to dump certain sediment from a channel adjoining one of its plants into an area called the Historic Area Remediation Site (the "Site"). This Memorandum Order states the reasons for the Court's Order of June 28, 2002 and directs entry of judgment.

The general background of this lawsuit is set forth in the Court's Memorandum Order of August 31, 2001 (denying defendants' motion to dismiss), familiarity with which is here presumed. On the parties' pending motions for summary judgment, the following facts are undisputed:

USG originally applied to the COE for the permit here in issue in April 1998. Although the COE is directly responsible for approving or disapproving such a permit, it may do so only with the concurrence of the EPA, see 33 U.S.C. § 1413, 33 C.F.R. §§ 423.1–.4; 40 C.F.R. §§ 225.1–.4, and so both agencies were involved. Following discussions among the relevant parties, USG amended its application in the Spring of 2000, following which the EPA and COE issued a Joint Evaluation Memorandum on July 19, 2000 that concluded that the sediment in issue was suitable for disposal at the Site. See United States Army Corps of Engineers Administrative Record ("ACEAR") at 192–209. Shortly thereafter, on August 11, 2000, the COE published public notice that it intended to issue the dumping permit, subject to public comment. See ACEAR 127–48. The public comment period closed on September 25, 2000, with only a few negative comments received. See ACEAR at 53–126.

■ However, the very next day (September 26, 2000), the COE and EPA published a joint Memorandum of Agreement (the "Memorandum") that lowered the permissible worm tissue level of polychlorinat-

ed biphenyls ("PCBs") in the relevant sediment from 400 parts per billion to 113 parts per billion, and made that standard applicable to all future and pending permit applications. See United States Environmental Protection Agency Administrative Record ("EPAAR") at 1205. One day later, on September 27, 2000, the EPA, by letter from its regional Administrator to the COE's District Engineer, withdrew its consent to issuing plaintiff's permit, on the ground that USG's dredged material failed to meet the new standard. See ACEAR at 51. While this effectively meant that USG's permit application was denied, no formal written notification to this effect was issued by the COE. However, on October 24, 2000 USG received a letter from the EPA's Regional Administrator confirming the EPA's conclusion that the USG material was no longer appropriate to be dumped at the Site. See ACEAR 31.

■ An agency action is "final," and thus appropriate for review by this Court, 5 U.S.C. § 704, when it "mark[s] the consummation of the agency's decisionmaking process," Whitman v. Am. Trucking Ass'ns, Inc., 531 U.S. 457, 121 S.Ct. 903, 915, 149 L.Ed.2d 1 (2001). The agency need not "dress[ ] its decision with the conventional accouterments of finality" for the Court to decide that agency has acted with finality and that its decision has been given practical effect. Id.; see also, Her Majesty the Queen in Right of Ontario v. EPA, 912 F.2d 1525, 1531 (D.C.Cir.1990). While the defendants would have this Court entertain the pretense that the Memorandum, and the EPA letters resulting therefrom, were merely "advisory," the foregoing undisputed facts make clear beyond genuine dispute that defendants, having approved plaintiff's permit subject only to public comment, withdrew and reversed that approval, not on the basis of any such comment, but solely on the basis of the

new standard embodied in the Memorandum.[1] That standard, being binding and outcome determinative, was a "rule," subject to the notice and comment requirements of the Administrative Procedure Act ("APA"). *See* APA, § 553, 5 U.S.C. 553; *see also, e.g., Community Nutrition Institute v. Young,* 818 F.2d 943 (D.C.Cir.1987); *Her Majesty the Queen,* 912 F.2d at 1531.

Indeed, the Memorandum, on its face, contemplates public review, *see* EPAAR 1203–06, and further contemplates that as the result of the new standard, as much as one-third of materials that would have been suitable for dumping in the past "may now be unsuitable for use as Remediation Material in light of this interim measure." EPAAR 1205. Yet, as defendants concede, the new standard, so outcome determinative on its face, has not been the subject of any of the notice and comment requirements of the APA.[2]

Accordingly, USG's motion for summary judgment is hereby granted to the extent that it seeks a judgment that the defendants' effective denial of plaintiff's permit application on the basis of this unlawfully promulgated rule was improper. It does not follow, however, that plaintiff is automatically entitled to the permit, because it is clear that the defendants never gave any consideration to the public comments that were received during the period that plaintiff's application was submitted for public comment prior to the promulgation of the new standard. While it may be doubtful that the few negative comments that were received would have made a difference, that determination is, at least in the first instance, for the agency, not the Court. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Consequently, this matter is remanded to the COE for reconsideration of plaintiff's permit application, applying pre-Memorandum standards but taking account of such public comments as were received before September 26, 2000. The COE is further directed to complete its review and make its final determination of whether or not to approve the plaintiff's permit by no later than September 30, 2002.

Clerk to enter judgment.

SO ORDERED.

---

1. That, on the record before this Court, no final COE rejection of USG's application has been issued is of no moment, as an agency is compelled to conclude matters presented to it in a reasonable time frame, 5 U.S.C. § 555(b); *Her Majesty the Queen,* 912 F.2d at 1534; and "[w]hen administrative inaction has the same impact on the rights of the parties as an express denial of relief, judicial review is not precluded." *Id.* at 1531.

2. As the Court noted in its Memorandum Order of August 31, 2001, the mere fact that the Memorandum recites that the new PCB standard is subject to continuing revision does not diminish its impact as a binding rule, as any and all regulations may be changed at some hypothetical future point. *See Appalachian Power v. Environmental Protection Agency,* 208 F.3d 1015, 1022 (D.C.Cir.2000). Likewise, while counsel for the parties spend much time in debating the appropriate standard for determining whether a rule is a "legislative" rule subject to notice and comment or an "interpretive" ruling not so subject, *see American Mining Congress v. Mine Safety & Health Administration,* 995 F.2d 1106, 1110–12 (D.C. Cir.1993), here the "sea change" brought about the Memorandum, which vastly altered the previous PCB standard and (as shown by the events here) effectively required immediate adherence by the defendant agencies, was the kind of substantive determination with material legal effects that would constitute a legislative rule by any reasonable standard. While defendants also note that the previous standard was not itself apparently subject to notice and comment, that prior standard is not here challenged and so its status is not before the Court.